## YAZOO & MISSISSIPPI VALLEY RAILROAD CO. *v.* C. F. TILLMAN.

### [61 South. 658]

CARRIERS.  *Injury to passengers.  Defective platform.  Evidence.*

In a suit by a passenger against a railroad company for injuries alleged to have been caused by a defective platform in front of defendant's passenger coach, *held* that there was sufficient evidence to show that plaintiff's injury was so caused, irrespective of whether the *prima facie* presumption of negligence arising from injury caused by running cars applies or not.

APPEAL from the circuit court of Yazoo county.

HON. MONROE MCCLURG, Judge.

Suit by C. F. Tillman against the Yazoo & Mississippi Valley Railroad Company. From a judgment for plaintiff, defendant appeals.

This is an appeal from a judgment for two thousand dollars against the appellant for injuries received by appellee while a passenger on appellant's train. The testimony is not entirely clear as to the exact manner in which the injury occurred; but it sufficiently appears from the evidence on behalf of the plaintiff that, just as the train was pulling into a station, moving very slowly, the plaintiff left one coach to go into another. When he

reached the platform, which was without vestibule, he stumbled over something and fell. He tried to catch himself, but failed, and was thrown to the ground and his arm broken. The evidence shows that the coach was old, and that the planks in the floor of the platform were loose, and could be kicked up with the foot. Plaintiff did not know just what his foot struck, but stated that it felt like a hole. The theory upon which he based his case was that one or more of the planks in the floor were out of place, and that he struck his foot against one of them, and it went into the hole and threw him forward. The defendant asked for a peremptory instruction, upon the theory that the statute making a *prima facie* case for plaintiff when it was shown that the injury was caused by the running of the cars did not apply, since the running of the cars was not responsible for the accident. It is the theory of the defense that plaintiff simply stumbled and fell off the platform while attempting to go from one coach to another, and that, since plaintiff's testimony does not show what caused him to stumble and fall with sufficient certainty, he has not made out his case.

*Mayes & Mayes,* for appellant.

The court will observe that Mr. Tillman was not injured by the running of the locomotive or the train, in the sense of the statute. He was on the train and walking over a platform, and he simply fell off. What hurt him was the way in which he fell on the ground. It was the fall to the ground that broke his arm. It was not the running of the train that injured him, even if it were true that the primary cause of his fall was a defective condition of the platform which caused him to stumble and fall off the train.

It is hardly necessary for us to cite cases on this point. It is well settled by several adjudications that in order to bring a case within the purview of this statute there must be either an actual impact with the moving train,

or else an impact with something near to the moving train, which impact is caused by the movement of the train itself, as in the case where a man was hurt by a mail crane as the train passed it, he being on the train.

As Mr. Tillman was not hurt by a moving train, the statute does not apply and the rule expounded by this court in the case of *Easley* v. *R. R. Co.*, 96 Miss. 396, has no application. That case applies only to an instance arising under the statute.

The case at bar comes under the common-law rule. The plaintiff must not only show by his evidence, negligence on the part of the railway company, but also show that the negligence which he claims to expose was the cause of his injury, and he must show what negligence was the cause of his injury. In other words, this case falls within the rule expounded in *R. R. Co.* v. *Cathay,* 70 Miss. 332.

Under that rule there should have been a peremptory instruction and verdict for the defendant. It is not sufficient for the plaintiff to have shown that for some reason not known to him, he fell off the platform and then to bolster that up by showing that the planks of the platform were in such condition that if he had stumbled over them, they might have caused him to fall. His own evidence shows that the planks were lying smooth and in place, although they were not secure against the efforts of a man who went there with the deliberate purpose to upset them. His own witness shows that immediately after the accident, when in response to a telephone from Mr. Tillman, he went to the platform to make an examination, while the planks were nailed down and could be and were by him disturbed, yet he found them in good order, without any apparent evidence that they had been disturbed by anybody.

It is all conjecture. Mr. Tillman wholly fails to show —he does not even pretend to know why he fell off that platform. He simply talks about "something." And that was the Cathey case precisely.

*Barbour & Henry,* for appellee.

The undisputed testimony in this case shows that the plaintiff was a passenger on the defendant's train, having paid his fare. The defendant therefore owed him every duty of a passenger. One of the duties was to furnish a reasonably safe platform. There is no claim here that the plaintiff was guilty of any recklessness in passing from one platform of the car to another car, at a time when the train was moving very slowly. In fact, there is no complaint about the instructions. The whole trouble, so far as the counsel for the appellant sees it, is the fact that the plaintiff has not shown how the injury occurred. To sustain this position, counsel for the appellant has set out in his brief four or five pages of the testimony of the appellee and one of his witnesses. The counsel has omitted from the statement of facts, however, certain testimony which makes plain what counsel seems to think the record does not show; that is, that the negligence of the defendant was the proximate cause of the injury. Counsel seems much pleased that the plaintiff below was unable to say exactly the condition of the platform at the time he was thrown forward to the ground. The plaintiff makes this perfectly plain by saying that the minute he stepped from the car door to the platform, the condition of the platform was such as to trip him, and throw him quickly and violently forward to the ground, causing the injury. The counsel for the appellant confuses the *Cathey case,* 70 Miss.——, with the facts of the instant case. The Cathey case was rightly decided, but it is no authority for the position taken here. In the Cathey case, it was merely shown that there was a condition of the rails, crossties, and the place where Cathey met his death, which could or might have caused him to fall under the wheels of the car and be killed. There was absolutely no evidence that Cathey's death was brought about by his coming in contact with a splintered rail, or an obstacle upon the right of way. If this had been shown,

the decision in the Cathey case would have been very different. Judge Campbell in the Cathey case says this: "It is not enough that the negligence of the employer, and the injury to the employee coexisted, but the injury must have been caused by the negligence."

Now in this case it appears, without dispute, that the injury to the plaintiff was caused by the negligence of the defendant. It is not contended, and could not be contended by such able counsel as represent the appellant here, that a platform in the condition which the evidence shows this platform to be was not negligence. In fact, it cannot be doubted but what it was gross negligence, and in fact of the very grossest character, for the reason that it is shown without dispute that, for more than a month before this injury, the condition of this platform was unsafe.

It appears without dispute that this platform, furnished by the defendant for passengers to pass into the cars and out of the cars upon, and to pass from one car to the other, without being guilty of negligence when the train was in slow motion, was in such condition that a man as is testified by the witness Parker could take his foot and not kick the planks up as counsel contend, but simply take his foot and rake across the platform, and gather into a heap the three planks that constituted the flooring.

The plaintiff testified, without any shadow of contradiction, that, when he stepped upon the platform, the first thing he knew he was tripped and thrown to the ground. He says in so many words without ground for argument, "My foot, up to my leg, up to my instep, where I believe it struck the plank" went into the opening which was then on the car platform. It is true that when he was pursued by counsel in the tiresome cross-examination, he said fretfully sometimes that it was a hole, or a box, or a barrel, meaning of course that it was an opening of some kind that his instep went into.

Whatever it was at that time, the proof shows that it was a defective and unsafe condition of the platform. The plaintiff, it is true, says that he does not know just how the condition of the platform was, for the reason that the accident happened so quick, but he does know, and the proof shows, that the planks are bound to have been loose, and one of the planks sticking above the other, so that, when his toe struck the raised plank, his entire foot up to the instep went into the opening, causing him to fall.

He says in so many words: "I stepped into something that tripped me, I don't know what it was." "Q. Did your foot go down? A. Yes, sir. I stepped into something, there was something that caused me to fall there, I don't know what it was."

The proof shows, however, without dispute, what it was. The platform was old. It was tongue and grooved flooring. The effect of rain and exposure to the sun had caused it to swell, so that the planks were no longer held in place by the tongue and groove of the flooring. One plank was above the other. They simply lay there, without being fastened, and the edge of one plank rested upon the other, so that this man got his foot caught between the planks. This is the hole that he talks about. It appears in evidence, without dispute, that three passengers, who were ignorant of Tillman's injury, after Tillman's foot had been caught in this trap when they alighted at Silver City, observed the shaking and unsafe condition of the platform. Having been requested by Tillman over the telephone to examine the platform, the witness Parker went there, and illustrated to the jury that he saw that the planks were losse, and that he simply took his foot and raked them, as one raking dirt on the surface of the ground, and raked every plank into the heap. It appears that, even after the repair of this crossing at Belzoni the night of the injury, as testified by the witness Hendricks, that one plank stuck up a distance of an

inch or an inch and a half above the other. This, the court will understand, was after the planks had been nailed down. This witness also testified that this platform was in this defective condition for at least a month before the injury to the plaintiff.

Cook, J., delivered the opinion of the court.

Conceding the law to be as contended by appellant, that the *prima facie* negligence statute does not apply in this case, the only thing left for consideration is a question of fact. A careful reading and rereading of this record convinces us that there is ample evidence to support the finding of the jury. In truth, it seems conclusive that the injury to the plaintiff was caused by the defective condition of the platform in front of the rear coach. We think the testimony leads to the inference that this defective condition had existed for quite a while before this accident, although there is some conflict of evidence upon that point.

*Affirmed.*